JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| METROPOLITAN LIFE INSURANCE COMPANY, | Case No.: 2:18-cv-04751-SVW-SS |
|---|---|
| Plaintiff-in-Interpleader vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT** |
| CHARLES ANDRES RAZO, JR., an individual, and EDDIE RAZO, an individual, | |
| Defendants. | |

## I. Introduction

On January 15, 2019, the Court held a one-day bench trial in this interpleader action. Defendant Eddie Razo ("Eddie") submitted a declaration containing his own direct testimony. At trial, Defendant Charles Razo Jr. ("Charles") and his wife Lisa Razo ("Lisa") testified and were cross-examined by counsel for Eddie. The Court also questioned Eddie regarding issues raised in the testimony of Charles and Lisa. Having carefully reviewed and considered the evidence presented at trial, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

1

## II. Findings of Fact

Ramon Razo ("Ray") was the uncle of Charles and Eddie, who were brothers. Ray retired from employment with General Motors ("GM"), and as part of Ray's retirement, he received a life insurance policy from Metropolitan Life Insurance Company ("MetLife"). *See* Ex. 1. On March 25, 2013, Ray completed and executed a beneficiary designation form naming Eddie as Ray's sole beneficiary for the life insurance policy. *See* Ex. 2. Ray and Eddie had a longstanding relationship; Ray was Eddie's godfather and treated Eddie like his own son.

Ray also had a close relationship with Charles. Charles lived with Ray for most of Charles' life, and Ray was also Charles' godfather. Starting in 2002, Ray resided with Charles and Lisa in a house in Camarillo, California. Ray and Charles split rent payments equally between them. Charles' and Lisa's daughter Teresa also lived in the house for a period of time.

In early April 2017, Ray visited a doctor for a routine appointment. During the appointment, Ray was informed that he had a serious health problem and was referred to a hospital for emergency medical attention. Ray was diagnosed with Stage 4 pancreatic cancer, but Ray refused chemotherapy or other radiation treatment for his cancer, opting instead for pain medication. While in the hospital, Charles and Lisa, and Eddie, visited Ray on multiple occasions. Ray was kept at the hospital for 2-3 weeks until the end of April 2017, at which point Ray discharged himself so that he could return home.

After returning home, Ray remained in a state of sedation due to the medication provided by the hospital prior to his discharge. Ray was placed into hospice care, and hospice nurses visited Ray regularly and provided him with morphine and Ativan to treat his pain and anxiety, respectively. Lisa remained home to take care of Ray, and Lisa provided Ray with half of his prescribed medication as advised by Ray's hospice nurses.

Several days after returning home, Ray told Charles and Lisa that Ray wanted Charles to have power of attorney on behalf of Ray so that Charles could manage Ray's affairs. Charles agreed to accept power of attorney on behalf of Ray, and Charles and Lisa asked a hospice nurse for a recommendation for an attorney that could assist with granting Charles power of attorney. The hospice nurse referred Charles and Lisa to an attorney named David Edsall, who prepared

the necessary papers for conveying power of attorney to Charles. On May 2, 2017, in the presence of Charles, Lisa, and Mr. Edsall, Ray signed the Statutory Short Form Power of Attorney form prepared by Mr. Edsall (the "Power of Attorney"). *See* Ex. 5. Mr. Edsall notarized Ray's signature. *Id.* The Power of Attorney signed by Ray did not expressly provide Charles with the authority to change or modify Ray's beneficiaries for any of Ray's testamentary instruments, including Ray's life insurance policy.

Charles and Lisa presented inconsistent evidence when testifying about Ray's statements in connection with the Power of Attorney. Charles testified that he did not recall Ray mentioning a life insurance policy prior to the execution of the Power of Attorney, but Charles averred that he previously "assumed" Ray had a life insurance policy with MetLife, likely because Ray told Charles about it at some point in the past. Charles also testified that Mr. Edsall did not discuss a life insurance policy with anyone present during the execution and notarization of the Power of Attorney. Lisa, on the other hand, testified that Ray specifically stated that Ray intended for Charles to use the Power of Attorney to change the beneficiary of Ray's life insurance policy from Eddie to Charles.

Over the course of May 2017, Ray's condition worsened, and Lisa continued to care for Ray at home. On May 25, 2017, Lisa contacted MetLife and requested a beneficiary designation form, which MetLife faxed to Lisa that afternoon. *See* Ex. 6. Lisa then filled out the beneficiary form, listing Charles as Ray's primary beneficiary and Lisa as Ray's contingent beneficiary. *Id.* Charles signed the form as Ray's agent under Charles' Power of Attorney and dated his signature as May 25, 2017. *Id.* Lisa faxed the completed beneficiary form, with Charles' Power of Attorney form attached, back to MetLife that same day. *Id.* Importantly, Ray did not sign the beneficiary form.

Lisa and Charles both testified that MetLife faxed the beneficiary form in early May, shortly after Charles executed the Power of Attorney. Lisa testified that she received and completed the beneficiary form on May 6, and that when Charles signed the form, Charles incorrectly listed the date as May 25 for unclear reasons due to fatigue or lack of sleep. Lisa testified that after she sent the beneficiary form to MetLife in early May, MetLife did not

3

respond immediately but may have requested additional information from Lisa, causing a delay in MetLife's response to the beneficiary form. Contradicting Lisa's testimony, Charles testified that the beneficiary form was not filled out for one to two weeks after it was received from MetLife, and that the beneficiary form was completed and signed in front of Ray, who approved of the change in beneficiary from Eddie to Charles. Neither Charles nor Lisa recalls why Ray did not sign the beneficiary form.

On May 27, 2017, Ray passed away. Three days later, on May 30, 2017, MetLife rejected the beneficiary designation form, stating that Charles' Power of Attorney did not authorize Charles to change Ray's beneficiaries. MetLife initiated this interpleader action to settle the competing claims between Charles and Eddie for Ray's life insurance proceeds.

The Court finds that the testimony from Lisa regarding statements made in connection with the execution of the Power of Attorney is not credible, because Lisa's testimony contradicts Charles' account of events. The Court also finds that the testimony from Eddie and Lisa regarding the completion and execution of the beneficiary form is not credible. The statements from Charles and Lisa regarding the timeline of the beneficiary form are belied by the beneficiary form itself, which contains fax lines at the top of the document indicating that the beneficiary form was received by Lisa on May 25, 2017 and sent back to MetLife the same day. *See* Ex. 6. Accordingly, the Court finds that there was no credible evidence presented at the trial that Ray knew of or approved of a change in beneficiary for Ray's life insurance policy, prior to or at the time Lisa sent the completed beneficiary form to MetLife.

The Court in this regard has considered, among other things, the manner in which the witnesses testified, their interest in the outcome of the case, and the reasonableness of their testimony in light of all of the evidence. The Court has also considered the relevant factors in Section 1.14 of the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition), located at http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2018_9_0.pdf.

**III.   Conclusions of Law**

Powers of attorney in California are governed by California Probate Code §§ 4200-4600. Section 4401 provides a statutory form of power of attorney. A statutory short form power of attorney created using the form in Section 4401 "does not empower the agent to take any of the actions specified in Section 4264 unless the statutory short form power of attorney expressly grants that authority to the attorney-in-fact." Cal. Prob. Code § 4465. Section 4264(f) states that a power of attorney must expressly grant the attorney-in-fact the authority to "[d]esignate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death." *Id.* § 4264(f).

The Power of Attorney signed by Ray designating Charles as Ray's agent did not explicitly grant Charles the authority to change the designation of beneficiaries for any of Ray's property or benefits, including the MetLife life insurance policy. Therefore, the Power of Attorney was insufficient as a matter of law to change Ray's life insurance beneficiary from Eddie to Charles.

"As a general rule, California requires a change to a beneficiary designation to be made in accordance with the terms of the policy." *Life Ins. Co. of N. Am. v. Ortiz*, 535 F.3d 990, 994 (9th Cir. 2008) (citing *Cook v. Cook*, 17 Cal. 2d 639, 648 (1941)). The Court finds that the beneficiary designation form completed by Ray in March 2013 naming Eddie as the beneficiary for the MetLife life insurance policy satisfied the requirements of Ray's life insurance policy, because MetLife has not challenged its validity.

There are three exceptions to the general rule that a beneficiary change must abide by the insurance policy terms: "(1) when the insurer waives strict compliance with its own rules regarding the change; (2) when it is beyond the insured's power to comply literally with the insurer's requirement; or (3) when the insured has done all that he could to effect the change but dies before the change is actually made." *Id.* (citing *Cook*, 17 Cal. 2d at 648). Here, the only relevant exception is the third, regarding whether Ray has done all he could to effect a change in the designated beneficiary for the MetLife life insurance policy prior to Ray's death. The decedent's intent to change a beneficiary "must be clearly manifested and put into motion as much as practicable." *Id.* (citation omitted); *see also Manhattan Life Ins. Co. v. Barnes*, 462 F.2d

629, 633 (9th Cir. 1972) ("California demands that substantial steps be taken to actually change a beneficiary before the formal requirements of the contract may be ignored.").

Based on the above findings of fact, the Court concludes that Charles has not provided sufficient evidence to establish that Ray had a clearly manifested intent to designate Charles as the beneficiary for Ray's life insurance policy with MetLife. Even assuming that Ray did have such an intent to change the MetLife beneficiary from Eddie to Charles, Charles also has not provided sufficient evidence to establish that Ray had done all he could, or even that Ray took substantial steps, to effectuate that intent. The fact that Ray did not sign the beneficiary designation form completed by Lisa and executed by Charles is, to the Court, particularly probative.

**IV. Conclusion**

In light of the Court's findings of fact and conclusions of law, the Court enters judgment in favor of Defendant Eddie Razo.

IT IS SO ORDERED.

Date: January 16, 2019

_____
HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE